### Case No. 4,616.
The FALCON.
[Blatchf. Pr. Cas. 52.][1]
District Court, S. D. New York. Sept. 5, 1861.

BETTS, District Judge. This vessel was captured on the 5th of July, 1861, by a United States war steamer, under command of James Alden, commander in the United States navy, off Galveston, Texas, in the Gulf of Mexico, and was sent in charge of a prize crew by the master of the steamer, as prize of war, to this port, where she arrived and was delivered to the possession of the prize commissioners about

[1] [Reported by Samuel Blatchford, Esq.]

the 20th of August thereafter. At the time of the capture of the schooner the commander of the steamer inadvertently allowed the master, crew, and passengers of the schooner to go on shore in Texas, and no person who was on board the schooner at the time of her capture was detained and sent with her in charge of the prize master and crew, or was or could be produced on the examination in preparatorio in the suit. On affidavit showing these facts, and on motion of the attorney for the United States, the testimony of captors and witnesses present at the capture was, by order of the court, allowed to be taken and read on the hearing. This is the established practice of the French prize courts, but would, it seems, be regarded as irregular in the English and American tribunals, except upon special circumstances outside of the common-law rules of practice prevailing in those courts. The Henrick and Maria, 4 C. Rob. Adm. 57, note; The Eliza and Katy, 6 C. Rob. Adm. 189, 190; Pritch. Adm. Dig. 421 (333); C. Robinson, Collectanea Maritima, 75, art. 6; 1 Wheat. [14 U. S.] Append. 496.

The papers found with the schooner on her capture prove that she was enrolled by H. Seaburn, her owner, a resident of Texas, March 19, 1857, and licensed to him at the same place June 11, 1860, and was laden with cargo shipped from enemy ports in Louisiana to enemy ports in Texas. No party intervenes to claim the vessel and cargo. In addition to these facts, proving the vessel and cargo to be enemy property, the evidence in preparatorio shows that the vessel had on board an enemy flag, and that the master admitted he had used it on the last voyage. It is of less importance to scrutinize the regularity of points of practice in the suit, as purely a suit in prize, because the property captured and seized, being now held in custody by the United States, both on its capture and also by arrest upon process out of the court, appropriately falls within the provisions of the acts of congress of July 13, 1861, and August 6, 1861 (12 Stat. 257, § 5; Id. 319, §§ 1–3); and being thus held within the cognizance of the court, the attorney for the United States moves the court to order its confiscation, pursuant to the authority of those acts. It is adjudged by the court that, both upon the original capture of the property libelled and the prayer of the libel, and upon such motion of the United States attorney on the pending arrest and seizure of the schooner, her tackle and cargo, the same be condemned as enemy property and prize of war, and be confiscated to the use of the libellants, according to law. The practice in American prize courts is to make final condemnation of enemy property at the hearing of the cause upon the ship's papers and the evidence in preparatorio. The Harrison, 1 Wheat. [14 U. S.] 298. The suspension of a year and a day after a default is

allowed only when it is doubtful, upon the evidence, whether the property captured belongs to the enemy or is neutral. Id.